The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| UNITED STATES OF AMERICA, | NO. CR23-007 RAJ |
|---|---|
| Plaintiff, | |
| v. | GOVERNMENT'S SENTENCING MEMORANDUM |
| CLAYTON HARKER, | |
| Defendant. | |

## I.    INTRODUCTION

For Clayton Harker, children are a means to an end—that end being his sexual gratification.  On multiple occasions, he has tried to gain access to young girls so he can rape them.  Indeed, that he did not brutalize a child on the night of his arrest is only because that little girl did not exist.  Make no mistake, had a little girl been in that hotel room instead of undercover federal agents, she would have been yet another casualty in Harker's wake.

Of course, his crimes do not involve only fictitious children.  By his own admission, he has used threats and extortion to compel numerous children to send him sexually explicit imagery.  And the glee with which he discussed child sexual abuse and the creation of the imagery recording that abuse is nothing short of monstrous.

GOVERNMENT'S SENTENCING MEMORANDUM - 1
*United States v. Harker*, CR23-007 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Simply put, Harker has cut a swath of destruction across the lives of vulnerable minors whose only mistake was to cross paths with a predator.  The threat he poses is real.  And neutralizing that threat will require incapacitation through lengthy confinement followed by close supervision for the remainder of Harker's life.

Accordingly, the government recommends that this Court sentence Harker to 30 years in prison followed by lifetime supervision.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

As detailed in the criminal complaint, Dkt 1, this investigation began in November 2022.  Federal agents obtained Snapchat content for a user in Virginia and discovered Harker was among those that Virginia user was messaging.  In addition to trading child sexual abuse imagery, the two messaged extensively about child sexual abuse and methods for getting minors to create and send sexually explicit imagery.  Harker also offered to pay this user $1000 to rape his seven-year-old niece.

Federal agents then initiated an undercover investigation targeting Harker.  An undercover agent purporting to have an eight-year-old niece started communicating with Harker over Snapchat.  And Harker quickly (and repeatedly) expressed his interest in meeting and raping that child.  He also asked if he could film that abuse.

A second undercover agent also began communicating with Harker over Snapchat, purporting to be this fictitious eight-year-old girl.  In the days that followed, Harker engaged in extensive and graphic sexual conversations with someone he believed to be an eight-year-old girl, even sending her sexually explicit photos.  He also arranged with her "uncle" to meet both at a Bellingham-area hotel on December 20, 2022.

That afternoon, Harker arrived at the hotel carrying with him lubricant, a digital camera, memory cards, and a ski mask to conceal his identity while filming his rape of this child.  In a post-*Miranda* interview, Harker explained that he intended to vaginally and orally rape this young girl and use the camera he brought with him to film those acts.

GOVERNMENT'S SENTENCING MEMORANDUM - 2
*United States v. Harker*, CR23-007 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

He also told agents that he regularly solicited minors to send him sexually explicit imagery over the internet and would use threats and extortion when necessary to induce these children to send him that imagery.  He explained he was sexually interested in children and his preferred age range was infant/toddler to early teens.  Finally, he said he regularly gratified himself while viewing child sexual abuse material or fantasizing about abusing children he encountered in his day-to-day life.

That same day, agents arrested Harker, and a federal grand jury charged him with attempted violations of 18 U.S.C. § 2251(a) (Production of Child Pornography) and 18 U.S.C. § 2422(b) (Enticement of a Minor).  Harker entered into a plea agreement and pled to a superseding information charging him with one count of attempted enticement of a minor and one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B).

### III.    GUIDELINES RANGE

The government agrees with U.S. Probation's calculation of the advisory range in this case.  With a TOL 43 and CHC I, the advisory range is life.

### IV.    SENTENCING RECOMMENDATION

The government believes a sentence of 30 years of imprisonment followed by lifetime supervision is an appropriate sentence given the factors in 18 U.S.C. § 3553(a).

Clayton Harker delighted in brutalizing innocent children.  He went to great lengths to realize his dream of violating a young girl.  And he blackmailed young girls to obtain the material he craved to gratify his sexual appetite.  Make no mistake, the harm he has caused is real, and the harm he would have caused given the chance is impossible to overstate.

Sexual violence against a child is as much an attack on that child's psyche as it is a physical assault. Bodies often heal in time, but it is the unseen emotional and psychological hurt that always remains.  Survivors, not the perpetrators, bear the heavy

GOVERNMENT'S SENTENCING MEMORANDUM - 3
*United States v. Harker*, CR23-007 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

psychological load that all survivors of child sexual abuse must carry.  And they will do so for the remainder of their lives.

Nor is the harm Harker caused confined to those with whom he had direct contact. He sought out and gratified himself using imagery depicting the very worst moments of a child's life.  Indeed, he repeatedly asked one likeminded offender for imagery of toddler rape.

Sadly, Harker's crimes are all too common.  The scourge of child sexual abuse that threatens children around the world seems only to worsen as time passes.  That this newest tragedy is just one more in a long series, however, makes it no less devastating for the survivors.  And as a community beset by a seemingly never-ending deluge of such tragedies, we must stiffen our resolve and resist becoming numb.  What Harker did was outrageous, and outrage is the correct sentiment every time an adult does violence to a child.

Harker doubtless had no control over having a sexual interest in children.   What he could control, however, was the decision to give into that impulse over and over. Time and again, Harker chose gratification through sexual violence over the well-being of children.

These children and their families, not Harker, will ultimately pay the price for this selfishness and cruelty.  It therefore falls to this Court to speak for the community and state in no uncertain terms that those who commit acts of sexual abuse against the most vulnerable among us cannot escape justice.

The Sentencing Guidelines are "the starting point and the initial benchmark," *Gall v. United States*, 128 S. Ct. 586, 596 (2007), and are to be kept in mind throughout the process.  *Id*. at 596-97, n. 6.  In *United States v. Carty*, 520 F.3d 984 (9th Cir. 2008), the Ninth Circuit set out the factors, as well as the framework, for how a district court should approach sentencing.  The Court stated that the "overarching statutory charge for a

GOVERNMENT'S SENTENCING MEMORANDUM - 4
*United States v. Harker*, CR23-007 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

district court is to 'impose a sentence sufficient, but not greater than necessary' to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment." *Id*. at 991, quoting 18 U.S.C. 3553(a) and (a)(2).

Critical to the imposition of an appropriate sentence in this case is the fulsome consideration of the 18 USC § 3553(a) factors including the seriousness of the offense, promoting respect for the law, just punishment, deterrence, the Defendant's history and characteristics and avoiding disparate sentences.

**1.      Seriousness of the offense, promoting respect for the law, provision of just punishment and deterrence**

Sexual violence of any kind, but particularly against children, attacks our collective decency and fuels an increasingly visible public health crisis.  *See New York v. Ferber*, 458 U.S. 747 (1982) (noting more than 40 years ago that the "Government has a compelling state interest in protecting children from those who sexually exploit them, including both child molesters and child pornographers").

This type of crippling emotional injury will forge a lifelong psychological headwind for victims, forever jeopardizing their self-esteem and well-being.  With a lifetime of psychological insecurity and a weakened trust in others, they will likely struggle with isolation, depression, and other mental health issues.  In an instant, sexual violence robs victims of their childhood, inflicting psychological wounds that will never fully heal.

The intolerable prevalence of child sexual abuse is a menace that has, by its nature, avoided precise measurement. However imprecise, its impact continues to impose a grave and consequential societal cost.  Internationally and domestically, our community faces a deeply disturbing reality of broad-based child sex abuse trauma. The select few

GOVERNMENT'S SENTENCING MEMORANDUM - 5
*United States v. Harker*, CR23-007 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

studies that have attempted to examine the depth of this epidemic suggest a staggering prevalence of child sex abuse domestically, much less around the world.

In a 1986 study of 2,626 American adult men and women, researchers found that "27% of women and 16% of the men" reported sexual abuse as children. DAVID FINKELHOR, GERALD HOTALING, I.A. LEWIS & CHRISTINE SMITH, *Sexual Abuse in a National Survey of Adult Men and Women: Prevalence, Characteristics, and Risk Factors* 20-21 (Pergamon Press plc 1990). Of those female survivors, an alarming *72%* reported that their abuse came at the hands of offenders at least 10 years older. *Id* at 22.

Together, those twin statistics reveal that more than 19% of female participants acknowledged experiencing childhood sexual abuse by an offender at least 10 years their senior. Worse yet, 57% of these female survivors did not disclose their abuse to anyone for at least a year, if ever. *Id.*

As we begin to reckon with the depth of this epidemic, we also continue to struggle with understanding the neurological impacts of this insidious brand of trauma. Although the nature of this trauma does share some similarities with military service-connected PTSD, the growing data suggest child sex abuse trauma may be far more debilitating.

In 1986, Frank Putnam and Penelope Trickett began a twenty-year study of eighty-four girls referred by the District of Columbia Department of Social Services who had suffered sexual abuse at the hands of a family member. BESSEL VAN DER KOLK, The Body Keeps The Score 164 (2014) (quoting Martin Teicher, MD, PhD, Scientific American). The study compared this group to a control group of "eighty-two girls of the same age, race, socioeconomic status, and family constellation who had not been abused." *Id.* The study achieved "unambiguous" results that the group of abused children, when compared to their unabused peers of the same age, race, and social circumstances, suffered a range of "profoundly negative effects, including cognitive deficits, depression,

GOVERNMENT'S SENTENCING MEMORANDUM - 6
*United States v. Harker*, CR23-007 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  dissociative symptoms, troubled sexual development, high rates of obesity, and self-

2  mutilation." *Id.*

3          As the study continued, researchers also discovered the abused girls increasingly

4  "shut down and became numb" while also demonstrating increasingly elevated amounts

5  of the stress hormone cortisol. *Id.* Sadly, this numbing phenomenon was found to have

6  fueled a vicious cycle for these survivors wherein family, friends and others were

7  decreasingly likely to notice indicia of the victim's abuse despite the victim actually

8  experiencing considerable contemporaneous trauma. *Id.* Indeed, many of these

9  participants were far less prepared to "react[] to distress" and take "protective action"

10 while also unwittingly concealing their trauma through a superficial numbness that

11 frustrated diagnosis and treatment. *Id.* at 165.

12         To be sure, the most egregious acts Harker contemplated—raping a little girl—

13 never came to pass. But that was not for want of desire on his part.  It is a product of the

14 work of law enforcement.

15         Section 3553(a)(2)(A) asks this Court to fashion a sentence "to reflect the

16 seriousness of the offense, to promote respect for the law, and to provide just punishment

17 for the offense."  The science examining the effects of child sexual abuse trauma

18 demonstrates the profound long-term consequences that flow from that abuse.  Harker's

19 victims now face an elevated risk of attempting suicide, using illicit drugs, and having

20 alcohol problems.  In short, by sexually attacking these children, the defendant has

21 subjected them to significant long-term health consequences.

22         Finally, there is also a compelling need for deterrence—specific and general.

23 Because of the profound harm caused by child sexual abuse, the message to those who

24 commit sexual violence must be simple and unequivocal.  That is, those who offend

25 against children must understand in no uncertain terms that the consequences for doing so

26 will be dire.

27         **2.      Characteristics of the defendant and Protection of the Community**

GOVERNMENT'S SENTENCING MEMORANDUM - 7
*United States v. Harker*, CR23-007 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The scope and scale of Harker's offense conduct are alarming.  It is apparent that Harker was either unwilling or unable to exercise even a modicum of control over his dark sexual desire.  There is every reason to believe that given the opportunity, he will offend against a child.  And only lengthy confinement followed by close supervision has any hope of mitigating that risk.

Harker's age presents a separate challenge in this context.  On the one hand, he is a young man with many years ahead of him. Those years bring with them the promise of a productive life.  On the other, however, his many years also present an opportunity for him to return to his old patterns.  His sexual attraction to children is unlikely to go away, and there is ample reason to believe that whatever he says now, he will have no greater control over that desire going forward than he had before.

**3.      The need to avoid unwarranted sentencing disparities among defendants**

To be sure, there are cases involving the sexual abuse of children in which judges of this district have sentenced the offender to terms of imprisonment substantially below the advisory Guidelines range.  Still, multi-decade sentences are routine in this district for cases involving child sexual abuse as well.  *See, e.g., United States v. Thompson,* CR20-5250 RJB (30-year sentence for defendant who raped multiple young girls); *United States v. Descoteaux,* CR16-5246BHS and CR17-5074BHS (276-month sentence for defendant who repeatedly raped his stepdaughter over the course of a 4-year period); *United States v. Morales,* CR16-5493RJB (240-month sentence for defendant who produced CP images depicting rape of two-year-old autistic daughter); *United States v. Crawford*, CR16-5303RBL (120-month sentence for defendant suffering from Autism/Asperger's Syndrome who raped his six-year-old niece); *United States v. Donald McCoy, Jr.*, CR16-284JLR (288-month sentence for production, distribution ,and possession of child pornography for  defendant who molested four young girls and filmed the abuse); *United States v. Thorson*, CR16-277RSM (324-month sentence for defendant who produced CP

GOVERNMENT'S SENTENCING MEMORANDUM - 8
*United States v. Harker*, CR23-007 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

images of numerous minors while they slept including one image wherein the defendant placed his erect penis next to 9-year-old granddaughter's mouth); *United States v. Joseph Thomas French*, CR15-5014RBL (300-month sentence for defendant who restrained victim under 11-years-old, vaginally and anally raped her on at least 15 occasions and broadcast these events on the internet); *United States v. Blaine K. Nipp*, CR14-5051RJB (276-month sentence for defendant with a lengthy criminal history who produced and distributed images depicting his masturbation against the foot of an incapacitated 10-year-old non-family member); *United States v. Leroy Williams*, CR14-034RSL (360-month sentence for defendant with prior child rape conviction who produced child sexual abuse imagery depicting his rape of a young girl); *United States v. David Michael Navarro*, CR13-5525BHS (276-month sentence for defendant who produced, distributed, and possessed materials depicting the sexual exploitation of children); *United States v. Jonathan Scott Lee*, CR13-5006RBL (300-month sentence for defendant who produced, distributed, and possessed materials depicting the sexual exploitation of children); *United States v. David Engle*, CR12-366JLR (300-month sentence for defendant who produced, received, and possessed materials depicting the sexual exploitation of children); *United States v. Phillip Allen*, CR12-260RAJ (264-month sentence for defendant who produced and distributed pictures of child sexual exploitation).

***

The government's 30-year recommendation is a lengthy one to be sure. But it is a recommendation borne largely of its extreme concern about the danger Harker poses to children. His offense conduct shows very clearly why there is good reason to fear that he will offend again given the chance. Thus, the only tools available to protect the community are his incapacitation through confinement and close supervision upon release.

GOVERNMENT'S SENTENCING MEMORANDUM - 9
*United States v. Harker*, CR23-007 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## V.      RESTITUTION

The government has received one restitution claim from a series victim.  That victim, through counsel, has agreed to accept the mandatory minimum of $3,000.  Defense counsel has indicated the defendant will not oppose this request.

## VI.      WAIVER OF APPEAL

As part of the plea agreement, the defendant has waived the right to appeal the sentence imposed in this case if the sentence does not exceed the applicable Guidelines range determined by the Court at the time of sentencing.  If the Court imposes a sentence within this applicable Guidelines range or less, the government respectfully requests that the Court notify Defendant, pursuant to Federal Rule of Criminal Procedure 32(j)(1)(B), that Defendant has waived Defendant's appeal rights except as to the effectiveness of legal representation.  Otherwise, the government requests that the Court notify Defendant of the right to appeal the sentence as set forth in Title 18, United States Code, Section 3742. est.

DATED this 16th day of February, 2024.

Respectfully submitted,

TESSA M. GORMAN
United States Attorney

*s/ Matthew P. Hampton*
MATTHEW P. HAMPTON
ZACHARY DILLON
Assistant United States Attorneys
U.S. Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101
Phone: (206) 553-6677
Fax: (206) 553-2502
E-mail:  matthew.hampton@usdoj.gov

GOVERNMENT'S SENTENCING MEMORANDUM - 10
*United States v. Harker*, CR23-007 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970