THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR23-007-RAJ |
| Plaintiff, | ) | |
| v. | ) | DEFENSE SENTENCING MEMORANDUM |
| CLAYTON HARKER, | ) | |
| Defendant. | ) | |

Clayton Harker, through counsel, respectfully asks the Court to impose the 10-year prison sentence that U.S. Probation recommends, to be followed by 15 years of federal supervision.

## I.  THE NATURE OF THE OFFENSE

In November 2023, law enforcement became aware of a Snapchat user named "mystery.govern" who possessed and distributed thousands of images of child sex abuse to hundreds of other Snapchat users. Mystery.govern also solicited sexualized images from minors and, on occasion, threatened to disclose those images if the minors did not send more. Agents eventually identified mystery.govern as a teenager named Joshua Parker. He has not been charged with any crime.

Mr. Parker's chats with Snapchat user "J_Smith5892" drew early attention because of their wide-ranging discussion of sexual exploitation of children, including rape and child pornography. Using fictious IDs, law enforcement approached J_Smith5892, later identified as Mr. Harker, and engaged him in discussions of sexual

DEFENSE SENTENCING MEMORANDUM
(*United States v. Harker*, CR23-007-RAJ) - 1

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

abuse. Mr. Harker told the undercover officer that he collected child pornography, distributed links to several images of child pornography, and expressed interest in having sex with, and filming, a fictitious eight-year-old girl. Mr. Harker claimed to have raped a five-year-old child named "Rose" who lived nearby. Mr. Harker, age 26, agreed to visit the eight-year-old girl at a hotel, where he was arrested as he arrived.

Over three wide-ranging post-arrest interviews that spanned many hours, Mr. Harker admitted a sexual interest in children, expressed a desire for mental health treatment, and expressed remorse for his conduct. He admitted that he had prepared for the sexual assault by bringing lubricant and a camera, though he also confessed that he did not really think he could have gone through with it. Mr. Harker acknowledged that he had solicited images from unknown people on Snapchat, some of whom he believed to be minors.[1] But Mr. Harker consistently denied ever hurting anyone in real life. He gratefully accepted the agents' offer of a polygraph to confirm that he had never engaged in any sexual misconduct with a child. Mr. Harker also gave law enforcement access to his Snapchat account, his email accounts, and his phone.

Ultimately, a forensic review of the existing and cached information on Mr. Harker's digital devices uncovered 211 images and 22 videos of child pornography. All the videos, and many of the images, had been received from Mr. Parker, sometimes in exchange for Xbox gift cards. Mr. Harker was not part of any pedophile community and did not use filesharing software. He used no other social media. Mr. Harker engaged in no sexualized chats with anyone other than Mr. Parker and the

---

[1] Snapchat has a feature called "Quickadd" that allows users to "discover friends on the platform." That was the feature Mr. Harker used to begin chats with hundreds of random people, many of whom he eventually asked for sexualized images. One of the reports includes a mistaken paraphrase that may have misled the prosecutor and Probation Officer – Mr. Harker did not confess to attempting to extort hundreds of people. His very few efforts were unsuccessful and Mr. Harker did not obtain any images..

DEFENSE SENTENCING MEMORANDUM
(*United States v. Harker*, CR23-007-RAJ) - 2

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

government's undercover officer. "Rose" does not exist. Mr. Harker's chats with Mr. Parker, though they are voluminous over a roughly eight-month period, describe a sequence of vile fantasies, rather than the conduct of an actual rapist. In fact, multiple polygraphs confirm that Mr. Harker has never engaged in any hands-on sexual misconduct of any kind as an adult. His only sexual contact with minors occurred when he himself was a minor.

From the beginning, Mr. Harker welcomed his arrest as a valuable intervention. He immediately offered to plead guilty, and then agreed to lengthy continuances to permit the government to complete its review his computers and investigate his social media accounts. Meanwhile, Mr. Harker's father, sister, and mother—all of whom suffer from some degree of mental illness—abandoned him. Counsel was Mr. Harker's only communication with the outside for about a year, until Mr. Harker's mother began communicating with him again. He earned commissary money by cleaning for a Latino gang. The government eventually asked Mr. Harker to plead before it had reviewed the Snapchat returns.[2] Despite counsel's reservations, Mr. Harker pleaded guilty without reservation. Mr. Harker's focus now is on obtaining placement in a facility that offers sex-offender treatment. Dr. Comte opines that Mr. Harker is amenable to treatment.

## II.     MR. HARKER'S HISTORY AND CHARACTERISTICS

Mr. Harker has an ACEs score of 6, reflecting that he was abused, humiliated, and neglected by his parents, and sexually assaulted by his sister when he was about 12 years old.[3] Both Mr. Harker's parents suffer from mental illness. His father exposed

---

[2] Mr. Harker's admission that he solicited nudes from hundreds of people is the only evidence of that crime. So far as the government has disclosed, there is no corroboration of that confession and no victims have been identified.

[3] Mr. Harker told the arresting officers that he felt his sexual interests were frozen at the age he himself was abused.

DEFENSE SENTENCING MEMORANDUM
(*United States v. Harker*, CR23-007-RAJ) - 3

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

him to sexually explicit material when he was an early teen. His mother abused alcohol and physically mistreated him.

Mr. Harker's parents and teachers initially interpreted symptoms of attention deficit hyperactivity disorder as willfulness or obstinance. Mr. Harker's parents controlled him by corporal punishment and by locking him in his room for prolonged periods. He has endured bullying throughout his life. Mr. Harker suffers from crippling anxiety and depression. As a result, Mr. Harker spent much of his life on the internet, much of that viewing pornography. Mr. Harker was not receiving his medication when he committed this offense. He had never before been accused of any misconduct.

### III.  A 10-YEAR SENTENCE IS SUFFICIENT TO PUNISH, DETER, REHABILITATE, AND PROMOTE RESPECT FOR THE LAW.

Imprisonment is such a stressful experience that any period of incarceration dramatically reduces an offender's life expectancy. *See* "Incarceration Shortens Life Expectancy," Prison Policy Initiative (June 26, 2017) (Citing studies showing that "Each year in prison takes 2 years off an individual's life expectancy. With over 2.3 million people locked up, mass incarceration has shortened the overall U.S. life expectancy by almost 2 years."); Daza S, Palloni A, Jones J. The Consequences of Incarceration for Mortality in the United States. Demography. 2020 Apr; 57(2):577-598 (analysis showing imprisonment reduces life expectancy by 13%, roughly 4–5 years at age 40). The trauma of imprisonment is particularly aversive for a first offender with diagnosed ADHD and anxiety disorders, a history of being bullied, and no outside resources, who is a target for violence because of his designation as a sex offender. For all these reasons, the Court need not be concerned that a decade's imprisonment will be insufficiently punitive.

Punishment alone does not reduce recidivism. *See* Lipsey, M.W. and Cullen, F.T. "The effectiveness of correctional rehabilitation: A review of systematic reviews."

DEFENSE SENTENCING MEMORANDUM
(*United States v. Harker*, CR23-007-RAJ) - 4

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

*Annual Review of Law and Social Science* (2007) at 8 ("[R]esearch does not show that the aversive experience of receiving correctional sanctions greatly inhibits subsequent criminal behavior. Moreover, a significant portion of the evidence points in the opposite direction – some such actions may increase the likelihood of recidivism."). Rather, a sentence will deter future misconduct "in the most effective manner" only when it pairs the aversive experience of prosecution with supervision and prosocial treatment. For that reason, U.S. Probation's recommendation—authored by an officer with substantial experience supervising federal offenders—includes conditions that dramatically restrict Mr. Harker's freedom while ensuring that he engages in required treatment subject to appropriate monitoring. That program, more than prison, is the surest deterrent.

Neither will imprisonment rehabilitate Mr. Harker. The daily terror of imprisonment creates a descending spiral of violence and humiliation that eventually annihilates a person's ability to sustain trusting relationships. From the day of Mr. Harker's arrest and throughout this prosecution, Mr. Harker has showed a level of remorse and vulnerability that will be critical for his rehabilitation, but which would simply make him a target in prison. A sentence longer than ten years risks undermining Mr. Harker's rehabilitation by damaging his ability to engage honestly with others.

### IV. A GUIDELINE SENTENCE LEADS TO AN UNREASONABLE SENTENCE AND CREATES UNWARRANTED SENTENCING DISPARITY.

Mr. Harker objects to the probation officer's guideline analysis, which (as the officer acknowledges) would lead to an unreasonably long sentence.

First, the probation officer increases Mr. Harker's guideline 6 points from 37 to 43 because Mr. Harker brought a camera to the fictitious meeting. That one factor increases Mr. Harker's guideline range from a little less than 20 years to life imprisonment, equating Mr. Harker's conduct with the conduct of the most serious serial rapists ever prosecuted in federal court.

DEFENSE SENTENCING MEMORANDUM
(*United States v. Harker*, CR23-007-RAJ) - 5

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

Second, the guideline range relies on a series of enhancements that even the Sentencing Commission concludes have little to do with culpability. For instance, USSG § 2G1.3(b)(3), which applies to both the enticement and possession charges, adds points for using a computer. USSG §§ 2G2.2(b)(2) **(+2)**, (b)(6) **(+2),** and (b)(7) **(+5)** similarly treats characteristics of child pornography that found in nearly all cases as though they are specifically aggravating in the individual case. The result, as the Sentencing Commission has noted, is a distortion of the 18 U.S.C. § 3553 analysis. *See* U.S. Sent'g Comm'n, *Federal Sentencing of Child Pornography: Non-Production Offenses* (2021) at 4, 19 (Because "[f]our of the six enhancements [for child pornography offenses] – accounting for a combined 13 offense levels – cover conduct that has become so ubiquitous that they now apply in the vast majority of cases...," the guideline "fails to distinguish adequately between more and less severe offenders" and "often results in overly severe sentences."). Without these enhancements, Mr. Harker also would not be subject to a multiple count, or "grouping," enhancement. His total guideline range would be 168 to 210 months. Even that is excessive.

To be clear, Mr. Harker remains determined to accept responsibility for all the misconduct he admitted. At the same time, Mr. Harker's case is surely the most mitigated the Court will ever see with either a guideline range of life imprisonment or a prosecutorial recommendation of 30 years' imprisonment. Mr. Harker engaged in no hands-on abuse. He did not produce child pornography, and possessed and distributed comparatively few images that could be classified as child pornography. Mr. Harker was not trolling for sexual experiences with children, and committed the serious enticement conduct only after law enforcement contacted him to offer that opportunity. Ultimately, the most aggravating aspect of Mr. Harker's case are his vile, alarming chat fantasies.

DEFENSE SENTENCING MEMORANDUM
(*United States v. Harker*, CR23-007-RAJ) - 6

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

For all these reasons, the government's uniquely aggressive approach to Mr. Harker's case risks creating an outrageous sentencing disparity and undermining respect for the law by suggesting that its approach is purely arbitrary. For comparison, the same prosecutor recommended 15 years' imprisonment for Defendant Marcus Lowe who, like Mr. Harker, showed up to have sex with a fictitious child but who, unlike Mr. Harker, also sexually abused a child, injured a law enforcement officer while trying to flee, and possessed and extensively distributed hundreds of images of child pornography. *See U.S. v. Lowe*, Dkt. 43, No. CR20-214-RSM. The government recommended only ten years' imprisonment for Defendant Justice Galloway, who responded to an undercover advertisement offering sex with six- and eight-year-old children, expressed an eager interest in meeting with a person he believed to be a mother offering her children for sexual abuse, and who was simultaneously charged with hands-on offenses in another district. *See U.S. v. Galloway*, No. CR21-020-RAJ. The government even explained why 20 years would be sufficient for Kaleb Scott, a young man with a difficult past who admitted sexually assaulting toddlers. *See also U.S. v. Rickdal*, No. CR16-334-JLR (144-month sentence for defendant who enticed minor while on supervision for prior sexual abuse offense). Counsel does not doubt that all of those recommendations were justified given the particular circumstances of those defendants. But those cases also involved more serious misconduct. The government can identify no legitimate reason for advocating a higher sentence here.[4] While the

---

[4] There is no mystery to the reason for the government's usual treatment of Mr. Harker. The government initially offered Mr. Harker a plea agreement in which both parties would recommend a 15-year sentence. Mr. Harker requested an agreement that would permit him to ask for a ten-year minimum penalty (which U.S. Probation ultimately recommended). Mr. Harker's request to share mitigation evidence with the Court is the government's *only* reason for now advocating a prison term that is double the sentence the prosecutor and his supervisor previously thought sufficient. Mr. Harker did not litigate anything, and the government uncovered no new evidence after his arrest. The

DEFENSE SENTENCING MEMORANDUM
(*United States v. Harker*, CR23-007-RAJ) - 7

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

probation officer's analysis takes into account Mr. Harker's "real conduct and circumstances," *Gall v. United States*, 552 U.S. 38, 54 (2007), the government's recommendation risks unconscionable disparity.

## V. SENTENCING AND DESIGNATION REQUEST

Balancing the 18 U.S.C. § 3553(a) factors, a sentence of ten years' imprisonment is "sufficient but not greater than necessary" here. Mr. Harker has admitted attempting to commit a terrible crime, but his conduct is no worse than others who have received similar, decades-long sentences, and is mitigated by his uncommon remorse and cooperation. Mr. Harker's personal characteristics—including his abusive personal history and the absence of any prior misconduct—are overwhelmingly mitigating. The way that he has welcomed this prosecution speaks to his understanding of the wrongfulness of his conduct and the sincerity of his desire for rehabilitation. Mr. Harker will suffer extraordinary punishment if sentenced to ten years' imprisonment, and will be further deterred and rehabilitated by the restrictions recommended by the probation officer.

So that he can benefit from BOP programming, including the Sex Offender Management Program, Mr. Harker respectfully asks the Court to recommend designation to FCI Petersburg, with FCI Milan and Terminal Island as alternatives.

DATED this 16th day of February 2024.

Respectfully submitted,

s/ *Gregory Murphy*
Assistant Federal Public Defender
Attorney for Clayton Harker

---

Court may consider this context when assessing the credibility of the government's recommendation.

DEFENSE SENTENCING MEMORANDUM
(*United States v. Harker*, CR23-007-RAJ) - 8

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100